26 A.3d 1071 (2010)
422 N.J. Super. 75
HERITAGE AT TOWNE LAKE, LLC, Plaintiff,
v.
PLANNING BOARD OF the BOROUGH OF SAYREVILLE, Defendant.
Docket No. L-2522-10
Superior Court of New Jersey, Law Division, Middlesex County.
July 23, 2010.
*1072 Stephen E. Barcan and Donna M. Jennings, Woodbridge, for plaintiff (Wilentz, Goldman & Spitzer, attorneys).
James P. Hoebich for defendant (Cahill, Branciforte & Hoebich, attorneys).
HURLEY, J.S.C.
Plaintiff, Heritage at Towne Lake, LLC ("Heritage"), is the owner of premises designated as Block 136.15, Lot 76 as shown on the official tax map of the Borough of Sayreville ("Property"). The Board of the Borough of Sayreville ("Board") identifies the property in its resolution as lot 76. Heritage's site plan identifies the lot as 75, as does Heritage's application for conversion dated October 27, 2009, signed by Heritage's general counsel, Ronald S. Blumstein. The tax designation is not critical to this decision. The property is part of the Towne Lake major subdivision, [R7 PRD], which was approved by defendant in 1998, and which created 260 single family lots. In March 2005, Heritage amended its plan to permit the construction of 200 age restricted residential units utilizing Sayreville's senior citizen housing density bonus. In November 2007, Heritage, based on its March 2005 approval, applied for and received amended preliminary and final site plan approval to construct fewer units due to economic market conditions. Consequently, the Board approved the scaled down project to 184 age-restricted, multifamily residential units.
In February 2010, Heritage filed its application to convert the age-restricted units to nonage restricted units in accordance with N.J.S.A. 45:22A-46.3 to -46.16 ("Conversion Statute"). The conversion application sought approval for the construction of seven one bedroom units; 170 two bedroom units; and seven three bedroom units. In accordance with the conversion statute, twenty percent of the residential units are to be allocated for affordable housing under ("COAH") regulations.
The Board conducted public hearings on Heritage's conversion application on February 3, 2010, at which Jason P. Kaplan, a principal of Heritage, testified. He testified that there is no market for senior citizen housing at this time. His opinion was based upon his market studies on age restricted housing in Sayreville as well as the surrounding municipalities. He also indicated that Heritage is currently unable to secure construction financing because of the lack of a market for senior housing. Kaplan described the amendment to the plan indicating that no physical changes to any structure is proposed. The building footprint will be the same, and the building elevations will be the same. The only change proposed is to the interior walls of the buildings; this is to make the three bedroom units a little bigger and the one bedroom units a little smaller. The two bedroom units are to remain the same.
William T. Wentzien, a New Jersey licensed professional engineer, also testified on behalf of Heritage's conversion application. *1073 He described the amendment to the site plan. He indicated that the only change contemplated is to the recreational area. As originally proposed, the plan provided for three bocce courts. The conversion plan eliminates the bocce courts and replaces them with approximately 2000 square feet of passive recreational space. The previously approved clubhouse and pool are to remain unchanged. He also confirmed Kaplan's testimony that no other physical changes to the site plan are proposed. Water and sewer are available to the site, and the allocated capacity for each is not impacted by the conversion.
Karl A. Pehnke, a New Jersey licensed professional engineer, was presented to the Board by Heritage as an expert in traffic engineering. Pehnke prepared an updated traffic assessment to account for the conversion from age-restricted to non-age-restricted residential development. His overall conclusion was that there is no significant change to the traffic patterns. He did confirm that a traffic signal, a condition of approval of the previous application, is still needed and will be constructed. He also testified that the previous plan provided for 368 parking spaces, and that the residential site improvement standards (RSIS), based upon the proposed bedroom mix, requires 367 parking spaces. Therefore, the conversion plan satisfies the RSI standards.
Paul Phillips, a licensed professional planner, was the last to testify for Heritage on behalf of the conversion application. Phillips addressed the recreational amenities. He indicated that over ninety-five percent of the units are to be one and two bedroom units, which are designed principally toward young professionals. Acknowledging that there will be an increase in children, he suggested that very few children are anticipated based upon the bedroom distribution proposed. He also noted that bocce courts are recognized as an amenity for the age-restricted class. Phillips also opined that the conversion to nonage-restricted residential development would not have a negative impact on the public good or on the zone plan. He based his opinion essentially upon the fact that no physical changes are proposed. Buffers remain the same; access to and from the property remains the same; and traffic impact is essentially the same. He indicated that the conversion statute recognizes that the conversion is deemed to be a permitted use, and therefore there is no impact on the zone plan. He stated that the only recognizable change is the elimination of the bocce courts, which is generally not provided in non-age-restricted developments.
At the conclusion of the public hearing, the Board adopted a resolution denying the conversion application. The Board adopted its memorializing resolution on March 17, 2010. Heritage now brings this action in lieu of prerogative writs seeking an order from this court reversing the Board's denial and granting the conversion to non-age-restricted housing.
The Legislature has vested the approving board with discretion by requiring the conversion applicant to prove that the conversion can be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan and zoning ordinance. The foregoing is the same criteria contained in N.J.S.A. 40:55D-70, generally referred to as the negative criteria. Once the conversion applicant presents its proofs to satisfy the negative criteria, the approving board, although not having a burden of proof, must set forth in its resolution valid and supportable reasons for granting or denying the application.
Pursuant to the terms of the conversion statute, N.J.S.A. 45:22A-46.13(b), *1074 this court is to examine the record below to determine if the Board's denial was reasonable. The decision on this appeal must resolve two questions: Have the statutory factors contained in the conversion statute been met, and if so was the Board's denial unreasonable as to mandate a reversal by this court? If the Board's decision is without reason or for the wrong reason, the decision is unreasonable. This court finds that Heritage met its burden relative to the statutory requirements of N.J.S.A. 45:22A-46.6(b), and that the Board's denial of the conversion application was unreasonable.
In its resolution of denial, the Board advanced the following relevant conclusions:
"3. That the applicant failed to provide the Planning Board with sufficient information to confirm its ability to develop the site in accordance (with) principles of sound planning;
4. That the proposed conversion is inconsistent with the Borough's Master Plan;
5. That the applicant, in its previous Resolutions of approval, took advantage of, and utilized, density bonus benefits not typically contained in the Borough's Ordinance. Therefore, to grant the conversion would unilaterally increase permissible density, be violative of, and skirt, the requirements of the previous Resolutions and the Ordinance;
6. That one of the specific goals of the Borough's Master Plan calls for the construction of housing which addresses the needs of senior citizens. There continues to be a need for age restricted housing in the Borough and an objective of the Borough's Master Plan;
. . .
8. That the applicant failed to provide the Planning Board with sufficient information or analysis of its recreational component ...; ...
10. That, for the foregoing reasons, the Applicant failed, after applying the Sica v. Board of Adjustment of Wall balancing test, to prove that there would be no substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance, as required under N.J.S.A. 45:22A-46.6(c); ..."
The conversion statute sets forth the requirements for a conversion. N.J.S.A. 45:22A-46.6(b) provides:
"Applications seeking amended approval for a converted development shall include documentation that all of the following site improvement and infrastructure requirements have been met;
(1) the site meets the Residential Site Improvement Standards parking requirement for the residential land uses in a converted development as established pursuant to N.J.A.C. 5:21-4.14 through -4.16;
(2) the recreation improvements and other amenities to be constructed on the site have been revised, as needed, to meet the needs of a converted development;
(3) the water supply system is adequate, as determined pursuant to N.J.A.C. 5:21-5.1, to meet the needs of a converted development;
(4) the capacity of the sanitary sewer system is adequate to meet the projected flow requirements of a converted development pursuant to N.J.A.C. 7:14A-23.3;
(5) if additional water supply or sewer capacity is needed and the developer is unable to obtain additional supply or capacity, the number of dwelling units in the development has been reduced accordingly;

*1075 (6) if additional parking is needed, and the developer is unable to provide the required parking, the number of dwelling units in the development has been reduced accordingly; and
(7) if additional parking is provided and increases the amount of impervious cover by more than one percent, the storm water system calculations and improvements have been revised accordingly, ..."
The Board argues that Heritage does not meet the statutory requirements to apply for a conversion. N.J.S.A. 45:22A-46.5(a)(1) requires plaintiff to obtain preliminary or final approval as a condition for change to a converted development. N.J.S.A. 40:55D-4 defines final approval as "the official action of the planning board taken on a preliminarily approved major subdivision or site plan, after all conditions, engineering plans and other requirements have been completed or fulfilled and the required improvements have been installed or guarantees properly posted for their completion, or approval conditioned upon the posting of such guarantees." The Board contends that Heritage failed to demonstrate that it has a valid final approval to qualify under the conversion statute. The Board relies on it prior resolution of approval, which is subject to numerous unsatisfied conditions, including its compliance with a ten page Technical Engineering Review. Pursuant to the resolution of approval, Heritage is also required to receive several outside agency approvals, which it has not yet received. Consequently, the Board contends that these facts further serve as a reasonable basis for which the Board made its determination, and further demonstrates that Heritage's conversion application does not meet the statutory requirements of the conversion statute. The court disagrees.
N.J.S.A. 40:55D-50(a) provides that "[t]he planning board shall grant final approval if the detailed drawings, specifications and estimates of the application for final approval conform to the standards established by the ordinance for final approval, the conditions of preliminary approval...; provided that in the case of a planned unit development, planned unit residential development or residential cluster, the planning board may permit minimal deviations from the conditions of preliminary approval necessitated by change of conditions beyond the control of the developer since the date of preliminary approval without the developer being required to submit another application for development for preliminary approval." It is clearly the intent of the legislation that if conditions are to be imposed on the grant of site plan approval, the approving board should first grant preliminary approval, leaving final approval after all conditions have been satisfied. Many planning boards do not adhere to this proposition. Instead, as has been done here, preliminary and final approval is granted with conditions not yet satisfied. The Board can not now complain that it granted final approval with conditions, but because the conditions have not been satisfied, no approval exists. The conversion statute clearly allows a developer to apply for a conversion after preliminary approval has been granted. Preliminary approval, by its nature, allows conditions to exist that are not yet satisfied. Either way, Heritage satisfies this jurisdictional standard in the conversion statute.
The Board also contends that Heritage received a density bonus to which it would not be entitled if no age-restricted development was originally proposed. Therefore, the conversion to non-age-restricted development is contrary to the zoning ordinance and the Borough's master *1076 plan. Borough Ordinance § 26-84.3(D)(2)(c) provides:
Senior citizen housing units shall not be counted as part of the calculated allowable total housing units, but shall be a required component of any R-7 (PRD) development and shall not exceed two hundred (200) units if developed in conjunction with non-age restricted housing. The R-7 (PRD) development shall be totally detached single family homes, except for the senior component which may be attached single family dwellings or multiple family dwellings.
A reading of the conversion statute resolves the issue. Legislative intent is derived from the statute's language, which should be given its ordinary meaning. Twp. of Pennsauken v. Schad, 160 N.J. 156, 170, 733 A.2d 1159 (1999). Statutes are to be interpreted to effectuate the legislative intent. Merin v. Maglaki, 126 N.J. 430, 435, 599 A.2d 1256 (1992). The court must seek to effectuate the "fundamental purpose for which the legislation was enacted." N.J. Builders, Owners & Managers Ass'n v. Blair, 60 N.J. 330, 338, 288 A.2d 855 (1972). The Legislature in enacting the conversion statute clearly indicates that the use is to be deemed a permitted use, and mandates that the "approving board" is to consider the conversion application. Approving board means the municipal or regional planning board, zoning board of adjustment, or joint land use board that issued the initial site plan or subdivision approvals for the given age-restricted development. N.J.S.A. 45:22A-46.4. In this case, the defendant Board is the approving board.
The Board's contention that the grant of the conversion application creates a density violation flies in the face of the plain meaning of the conversion statute. N.J.S.A. 45:22A-46.6 provides:
No application for an amended approval seeking the authority to construct a converted development shall be considered a "use variance" or other "`d' variance" application pursuant to subsection d. of section 57 of P.L.1975, c. 291 (C.40:55D-70). Both planning boards that initially granted approvals for the age-restricted development and zoning boards of adjustment that initially granted approvals for the age-restricted development shall have the legal authority to grant amended approvals for a converted development without the need to seek relief pursuant to subsection d. of section 57 of P.L.1975, c. 291(C.40:55D-70), it being the intent of this act that such converted developments are to be considered permitted uses in the zoning district in which they are located.
The term "use variance" refers to N.J.S.A. 40:55D-70(d)(1), and the term "other d variance" refers to N.J.S.A. 40:55D-70(d)(2) through (6) inclusive. If the density exceeds that permitted by the Borough's ordinance, a variance would be required pursuant to N.J.S.A. 40:55D-70d(5), thereby divesting the planning board, the "approving board", of jurisdiction. Accepting the Board's argument would be contrary to the intent and terms of the conversion statute.
The stated intent of the conversion statute is to allow the conversion of age-restricted housing to non-age-restricted housing, and to provide low and moderate income housing to another segment of society. "[T]he cost of both renting and homeownership remains unaffordable to a large percentage of New Jersey residents, including those who make vital contributions to their communities such as teachers, nurses, police officers, firefighters, and the general workforce population." N.J.S.A. 45:22A-46.3(a). In order to obtain the conversion, Heritage is required and will comply with the twenty percent set aside to satisfy the intent of the conversion statute. The Board's conclusion that there continues to be a need for senior *1077 citizen housing in the Borough is not supported in the record. It should be remembered that low and moderate income housing needs are regional obligations apportioned to each municipality within a given region. So too is the provision of senior citizen housing. See N.J.S.A. 40:55D-2(a), (b) and (I). The Legislature found that an oversupply of age-restricted housing approvals exists within this state, which resulted in an inability among the majority of New Jersey's workforce to live near their jobs. N.J.S.A. 45:22A-46.3(e). The phrase "oversupply of age-restricted housing approvals" is consistent with the testimony offered by Jason Kaplan. He testiefied that there is no market in this area for senior citizen housing, and there is no financing available to construct the units due to the lack of market.
The Board's conclusion that its denial, based upon the Borough's zoning ordinance and master plan, is justified is also without support. The conversion statute makes it clear that the use as approved, and to be converted, is to be deemed permitted. A permitted use is consistent with the zoning ordinance. A permitted use, however, may be consistent with the zoning ordinance but inconsistent with the master plan. See N.J.S.A. 40:55D-62(a). In the latter event, the governing body of the municipality makes a finding that the use, although not consistent with the master plan, is appropriate for the location. Other than the density issue raised by the Board, there is no support in the record for the conclusion that granting the conversion will result in a substantial detriment to the public good or substantially impair the intent and purpose of the zone plan and zoning ordinance. The language in the conversion statute is strong. If the standards set forth are satisfied and the negative criteria satisfied, "the application for the conversion shall be approved." N.J.S.A. 45:22A-46.6(c).
The final issue to be addressed is the adequacy of the recreational amenities. The only change proposed by Heritage is the elimination of the bocce courts. Heritage proposes to replace the bocce courts with an area of passive recreation. During the public hearing, Board members brought up for consideration that children will now be present, and that possibly a "tot lot" should be constructed to accommodate that change. The conversion statute authorizes this court, upon finding that the conversion should have been approved, may impose reasonable conditions that are deemed necessary. N.J.S.A. 45:22A-46.13(b). The court finds that the concerns raised by Board for a different form of amenity is appropriate given the addition of some children. The Board is hereby directed to adopt a memorializing resolution, within forty-five days, granting the conversion upon the condition that a tot lot be shown on the site plan in lieu of the bocce courts. If the Board and Heritage can agree on an alternative amenity to a tot lot, such shall be incorporated into the Board's resolution of approval. All other conditions of the last prior approval are to be continued.
Issues raised during the hearing of units for sale or for rent are not matters to be considered in land use cases. Such occupancy is a form of ownership, and does not impact use of the land. This court recognizes the Board's concerns relative to the increase in school age children, but the conversion statute must be said to have taken the issue under consideration when it deemed the use to be permitted. The testimony from Heritage is sufficient to establish that the increase will be minimal. There are no proofs to the contrary.